IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MELLONY BURLISON, *as parent and next friend of CM and HM, minors*, and DOUGLAS BURLISON, *as parent and next friend of CM and HM, minors*, and CAROLYN ROBINSON, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 10-3395-CV-S-RED ) |
| SPRINGFIELD PUBLIC SCHOOLS, NORM RIDDER, RON SNODGRASS and JAMES ARNOTT, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. 61); Separate Defendant Sheriff James Arnott's Motion for Summary Judgment (Doc. 60); and Motion for Summary Judgment by Defendants School District of Springfield R-12, Norm Ridder and Ron Snodgrass (Doc. 63). After careful consideration, this Court **DENIES** Plaintiff's motion, **GRANTS** Separate Defendant Sheriff James Arnott's motion, and **GRANTS** Defendants School District of Springfield R-12, Norm Ridder and Ron Snodgrass' motion.

## BACKGROUND

In 2009, Greene County Sheriff James Arnott ("Arnott") was contacted by Tom Tucker, Director of the School Police Services for Springfield Public Schools, who requested that Greene County Sheriff's Office canine units assist with drug detection exercises at high schools in the R-XII School District. Upon receiving this request, Sheriff Arnott assigned the matter to Captain Jim Farrell to coordinate the requested assistance. On April 22, 2010, Deputies James Inlow and Danny

Fillmore performed a canine drug detection exercise at the request and under the supervision of Springfield School District ("District") officials. Defendant Arnott was not present at Central High School on April 22, 2010.

During the course of the drug detection exercise, Deputy Inlow and canine Dar were escorted by school resource officers to the third floor of Central High School where they stopped in the hallway and waited for all of the students in Plaintiff C.M.'s classroom to leave the room. The students, including C.M., were taken to the opposite end of the third-floor hallway from where Deputy Inlow and canine Dar were standing. After all of the students were out of the classroom, Deputy Inlow was escorted into the classroom by school resource officers to deploy canine Dar. Deputy Inlow gave canine Dar his narcotic sniff command and walked down the aisles between the desks. According to established school policy, if the canine alerted to an item, Deputy Inlow or Deputy Fillmore would advise a school resource officer of the alert and walk the canine around the room a second time. If the canine alerted on the same item a second time, then a school administrator or school resource officer would examine the item for drugs outside of the presence of Deputies Inlow and Fillmore and their canine. It is undisputed that canine Dar did not alert on anything in C.M.'s classroom. There is no specific evidence that Deputy Inlow or Deputy Fillmore opened or touched any backpack, purse, or any other object belonging to any students. Any such touching by the Deputies would have been contrary to the applicable written policies.

When the drug detection exercise began, C.M. was in his "third block" class on the third floor of Central High School. C.M. testified that the canine never came within the "personal range" of C.M. The undisputed video of this activity clearly establishes that the canine Dar was never closer than thirty-four feet to C.M. C.M. also testified that before he left the classroom for the drug

2

detection exercise, he zipped up the pockets on his backpack. However, C.M. further testified that when he re-entered the classroom after the exercise had been completed, some of the zippers on his backpack were unzipped.

As H.M. arrived to school forty-five minutes late, she was not present in Central High School for the drug detection exercise. H.M.'s personal items were not in the Central High School building when the drug dogs were present. Because the doors to Central High School were locked and H.M. was informed that the school was being searched, H.M. returned home. While H.M. was on the school's campus she never saw any School Police Officers, Springfield Police Officers, Greene County Sheriff's Deputies, or drug detection dogs.

Plaintiffs Mellony and Douglas Burlison brought the above captioned case on behalf of the minors C.M. and H.M. and allege that C.M. and H.M. were deprived of their Fourth Amendment rights and their right to be free of unreasonable searches and seizures as set forth in Article 1, Section 15 of the Missouri Constitution.

## STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(a), summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When ruling on a motion for summary judgment, the Court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence." *Reed v. ULS Corp.*, 178 F.3d 988, 990 (8th Cir. 1999). A party can show that a fact is not genuinely disputed by "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

3

## LEGAL ANALYSIS

In order to "establish personal liability in a § 1983 action, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right." *Clay v. Conlee*, 815 F.2d 1164, 1169-70 (8th Cir. 1987). Plaintiffs have brought suit for alleged violations of the Fourth Amendment to the United States Constitution and Article I, Section 15 of the Missouri Constitution. The analysis for violations of both of these constitutional protections are identical. *State v. Johnson*, 316 S.W.3d 390, 395 (Mo. Ct. App. 2010)("article I, section 15 of the Missouri Constitution is parallel to and co-extensive with the Fourth Amendment."). Therefore, in order for Plaintiffs' Fourth Amendment rights or their rights under the Missouri Constitution, to have been violated, either C.M. or H.M must have been subjected to an unreasonable search and/or seizure.

Both the United States Supreme Court and the Eighth Circuit Court of Appeals have concluded that a canine sniff does not implicate a Fourth Amendment violation. *Illinois v. Caballes*, 543 U.S. 405, 410 (2005); *U.S. v. Sanchez*, 417 F.3d 971, 976 (8th Cir. 2005). Therefore, in order for C.M. to be subjected to an unreasonable search, there must be evidence indicating the occurrence of a search beyond the canine drug sniff.

There may be an issue as to whether C.M.'s belongings were searched as C.M. testified that before he left the classroom for the drug detection exercise, he zipped up the pockets on his backpack, but when he returned to the classroom after the drug detection exercise some of the pockets on his backpack were unzipped. However, even if C.M.'s backpack was searched by either the deputies or school police officers who were in the classroom, none of the Defendants in this case can be liable for any of the non-defendant officer's alleged violations.

**I.      Immunity from Claims asserted against Defendants in their Individual Capacity**

To establish personal liability in a § 1983 action, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Clay v. Conlee*, 815 F.2d 1164, 1169-70. Individual liability will attach under § 1983 if there is a causal link or direct responsibility for a deprivation of rights. *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). Instead, a supervisor is liable under § 1983 if

> he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)(quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).

### A. Defendant Arnott is not liable for the claims asserted against him in his individual capacity.

Even though Defendant Arnott assigned the drug exercise request to Captain Farrell to coordinate the assist, Defendant Arnott was not present at Central High School during the drug detection exercise and, thus, did not directly participate in any alleged constitutional violation. Moreover, it is uncontroverted that Deputy Inlow and his canine partner have taken part in extensive training and Plaintiff presents no evidence that Defendant Arnott failed to properly supervise his subordinates who were involved in the alleged constitutional violations. Finally, it is uncontroverted that Plaintiffs have no evidence that Defendant Arnott had any notice before April 22, 2010 that any custom or policy being utilized by his department, with respect to his deputies using canines for drug detection activities in schools, was unconstitutional. Though Plaintiffs claim to dispute this fact,

5

they do so in a conclusory manner and without controverting this fact with citations to the record; thus, this fact is deemed admitted pursuant to Local Rule 56.1(a). Thus, Defendant Arnott did not have notice that his training procedures and supervision were inadequate and likely to result in a constitutional violation. According to the established policies of the Sheriff's Department and the Springfield Public Schools, the role of the Sheriff's Deputies would be strictly limited to the canine sniff procedure and they were to actually be removed from the classroom before any search was done. There is nothing unconstitutional about the canine sniff as stated above and there was no reason for Defendant Arnott to believe or even suspect that his deputies would violate the established policies. Therefore, for the above stated reasons, Defendant Arnott cannot be liable for any potential violation in his individual capacity and summary judgment should be granted in favor of Defendant Arnott on this issue.

  **B.**  **Defendants Ridder and Snodgrass are not liable for the claims asserted against them in their individual capacity.**

Plaintiff presents no credible evidence that Defendants Ridder and Snodgrass were directly involved in the alleged constitutional violation, that Defendants Ridder and Snodgrass were present in C.M.'s classroom at the time of the alleged violation, and no evidence that either of them failed to properly supervise their subordinates involved in the alleged actions. Plaintiffs have made reference in Plaintiffs' motion for summary judgment to Defendant Arnott's Answer to Plaintiffs' Interrogatory Number 3 which stated that the Deputies' reports listed Ron Snodgrass along with ten others as being "present" in response to Plaintiffs' request to identify all persons "who participated in the drug detection activities" at Central High School. It is undisputed that Snodgrass was in the school and made decisions related to the search activities, but there is no credible evidence that he was in C.M.'s classroom when the search was conducted. Plaintiffs' own statements of fact 22 and

23 lists two assistant principals (Martin and Anderson) as the only school administrators who "followed and/or assisted in the use of the drug detection dogs." Defendants Ridder and Snodgrass specifically deny that Snodgrass was present during the drug detection activities in the classrooms. Read together this evidence is not sufficient to support a claim that Snodgrass was in C.M.'s classroom at the time of the search. For these reasons, summary judgment should be granted for Defendants Ridder and Snodgrass on any claims against them in their individual capacity.

## II.     Government Entity Liability Under § 1983

In order to attach liability to a government entity under § 1983, it must appear that the claimed constitutional deprivations were caused by a policy or custom of that entity. *M.Y., ex rel., J.Y. v. Special School Dist. No. 1*, 544 F.3d 885, 890 (8th Cir. 2008)(internal quotation omitted); *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)(*quoting Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990)). Moreover, for Plaintiffs to prevail on their claim, they must "show that the policy was unconstitutional and that it was 'the moving force' behind the harm that he suffered." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009)(citations omitted). Alternatively, a custom or usage is demonstrated by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.
> *Ware*, 150 F.3d at 880 (*internal quotations omitted).*

7

Case 6:10-cv-03395-RED   Document 90   Filed 01/25/12   Page 7 of 11

However, "[l]iability for an unconstitutional custom or usage . . . cannot arise from a single act." *McGautha v. Jackson Co., Mo., Collections Dept.*, 36 F.3d 53, 57 (8th Cir. 1994).

### A. Defendant Arnott is not liable for the claims asserted against him in his official capacity.

A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Thus, Plaintiff's suit against Defendant Arnott in his official capacity is a suit against his employer. The policy that Plaintiffs put in question is Greene County Sheriff's Policy 5-50-5 which authorizes the use of patrol canines for random exploratory sniffing of luggage, packages, or other inanimate objects in public facilities. This policy prohibits the initiation of a sniff on an individual's person with an aggressive alert canine. However, as stated earlier, a canine sniff does not implicate a Fourth Amendment violation.

Moreover, there is no evidence that the claimed constitutional deprivations were caused by a custom of the entity since, as stated above, it is uncontroverted that Plaintiffs have not set forth evidence that Defendant Arnott had any notice before April 22, 2010 that any custom or policy being utilized by his department, with respect to his deputies using canines to do drug detection activities in schools, was unconstitutional or that the deputies were not following the established policies. Therefore, Plaintiffs would not be able to prove the second prong of a "custom or usage." For these reasons, Defendant Arnott cannot be liable in his official capacity and, thus, he is entitled to summary judgment on this issue.

### B. The District is not liable under § 1983.

The only District policy which is at issue is SOP 3.4.1. SOP 3.4.1. provides "[t]he drug

8

Case 6:10-cv-03395-RED   Document 90   Filed 01/25/12   Page 8 of 11

detection dog may be used to sniff: (1) student lockers and desks; (2) backpacks, book bags, gym bags, purses or other similar items, when such items are not in the physical possession of a student or person; (3) automobiles located on or adjacent to the campus; and, (4) unoccupied areas of the building or campus." However, as previously stated, a canine sniff does not implicate a Fourth Amendment violation.

SOP 3.4.1. also provides that students will not be present in an area/room when the drug detection dog is working. Although students were directed to leave the classroom and relocate to an area in the hall, the Court finds this was not an unreasonable seizure. A seizure occurs when "a reasonable person would have believed that he was not free to leave" *U.S. v. Garcia*, 613 F.3d 749 (8th Cir. 2010) while a seizure of property occurs when there is some meaningful interference with an individual's possessory interests in the property. *United States v. DeMoss*, 279 F.3d 632, 635 (8th Cir. 2002). H.M. was not subject to a seizure as neither she nor her personal items were in the Central High School building when the drug dogs were present in the building. Moreover, C.M. was not subject to a seizure when he was asked to leave the room while the drug dogs conducted their drug sniff. *See Burbank v. Canton Board of Education*, 2009 WL 3366272 at *8 (Conn. Super. Sept 14, 2009); *Doe v. Renfrow*, 475 F. Supp. 1012, 1019 (N.D. Ind. 1979)(concluding that a student was not seized when the school regulated student movement). Furthermore, C.M.'s backpack was not subject to a seizure. *See Doran v. Contoocook Valley School Dist.*, 616 F.Supp.2d 184 (D.N.H. 2009)(the court concluded that no seizure of student possessions occurred when school officials required students to leave their belongings in the class and required the students to leave the school while drug detection dogs proceeded through the school). Therefore, the provisions of SOP 3.4.1.do not reflect a procedure which would constitute a constitutional deprivation.

9

Moreover, the Plaintiffs have set forth no evidence that the claimed constitutional deprivations were caused by a custom of the District. Therefore, Plaintiffs would not be able to prove the second prong of a "custom or usage." For the above stated reasons, the Defendant School District cannot be liable under § 1983 and, thus, is entitled to summary judgment on this issue.

### C. Defendants Ridder and Snodgrass are not liable under § 1983.

As a suit against a public employee in his or her official capacity is merely a suit against the public employer", a claim against Defendants Dr. Ridder and Dr. Snodgrass in their official capacity is essentially a claim against the District and, thus, Plaintiffs' claims against these Defendants are redundant to the claims against the District. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). For these reasons, Defendants Ridder and Snodgrass are entitled to summary judgment on any claims against them in their official capacity.

## CONCLUSION

The long and short of all of this is that the written policies and procedures of the Greene County Sheriff and the Springfield Public Schools involved in this case appear to be reasonable and not in any way a deprivation of a federal right. There is no allegation of any past activity contrary to these policies which would support a claim of custom or practice. The only evidence in this case which could possibly support a § 1983 claim is the slight possibility raised by C.M.'s testimony that some zippers on his backpack were unzipped, raising the inference that, even though there was no canine alert, someone searched his backpack in a manner that would be an individual violation of § 1983. Even if we assume there is sufficient evidence to support this claim, which is questionable, there is no evidence that any of the individual Defendants in this case performed that search of C.M.'s backpack or were even in C.M.'s classroom at the time of the search. Therefore, Plaintiffs

10

have not produced any admissible evidence to support a claim that any of the individual Defendants committed any such constitutional violation. For these reasons, summary judgment is appropriate on their claims.

For the above stated reasons, Plaintiffs' Motion for Summary Judgment is **DENIED**; Separate Defendant Sheriff James Arnott's Motion for Summary Judgment is **GRANTED**; and Motion for Summary Judgment by Defendants School District of Springfield R-12, Norm Ridder and Ron Snodgrass is **GRANTED**. Summary judgment is granted on all counts in favor of Defendants Springfield Public Schools, Norm Ridder, Ron Snodgrass, and James Arnott.

**IT IS SO ORDERED.**

DATED: January 25, 2012  /s/ Richard E. Dorr
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT